## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| BUCCANEER BEACH RESORT MOTEL INC., a Florida corporation, | |
| Plaintiff, | |
| v. | **CASE NO:** |
| T.I. GROUP INVESTMENTS, LLC, a Florida, limited liability company, SIMDAG INVESTMENTS, LLC, a Florida limited liability Company, and SIMDAG PROPERTIES LLC, a Florida limited liability company, | **INJUNCTIVE RELIEF REQUESTED** **JURY TRIAL REQUESTED** |
| Defendants. | |

## COMPLAINT

Plaintiff BUCCANEER BEACH RESORT MOTEL, INC. sues T.I. GROUP INVESTMENTS, LLC, SIMDAG INVESTMENTS, LLC, and SIMDAG PROPERTIES LLC (collectively "Defendants") and alleges:

## THE PARTIES

1.    Plaintiff BUCCANEER BEACH RESORT MOTEL, INC. ("Plaintiff") is a Florida corporation with its principal place of business in Treasure Island, Florida.

2.    Defendant T.I. GROUP INVESTMENTS, LLC ("T.I. Investments") is a Florida limited liability company with its principal place of business in Tampa, Florida.

3.    Defendant SIMDAG INVESTMENTS, LLC ("SimDag Investments") is a Florida limited liability company with its principal place of business in Tampa, Florida. Upon information and belief, SimDag Investments owns Defendant T.I. Investments.

4.      Defendant SIMDAG PROPERTIES, LLC ("SimDag Properties") is a Florida limited liability company with its principal place of business in Tampa, Florida.

## JURISDICTION AND VENUE

5.      This is a suit for violation of 15 U.S.C. §1125(a) and for Florida common law trademark infringement. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331 and 1338, and under the doctrine of supplemental jurisdiction (28 U.S.C. § 1367).

6.      This Court has personal jurisdiction over the Defendants pursuant to Fla. Stat. §§48.193(1)(a) & (b).

7.      Venue is proper in this district under 28 U.S.C. §1391(b)(1) & (2), and in this division pursuant to Local Rule 1.02(B)(4) & (C), M.D. Fla. Local Rules.

## GENERAL ALLEGATIONS

8.      Plaintiff is the prior user and owner of the Buccaneer Beach Resort trademark ("Buccaneer Mark") and is the possessor of all rights and goodwill in the Buccaneer mark.

9.      Plaintiff, either directly or through its predecessors in interest, has used its Buccaneer Mark in interstate commerce in connection with its offering of resort/motel services at 10800 Gulf Boulevard and 10836 Gulf Boulevard, Treasure Island, Florida ("the resort real property") at least since the 1950s. Plaintiff intends to continue using its Buccaneer Mark for such services.

10.     On or about May 19, 2004, Plaintiff and Defendant T.I. Investments entered into a contract (the "Commercial Contract") for the sale by Plaintiff to T.I. Investments of the resort real property and the furniture, fixtures and equipment used in operation of the resort. A true and correct copy of the Commercial Contract, which includes Addenda Nos. 1-4, is attached as Exhibit "A".

11.     On or about February 17, 2005, Plaintiff and Defendant T.I. Investments entered into a Modification to the Commercial Contract ("The Modification"), a true and correct copy of which is attached as Exhibit "B".

12.     On or about March 4, 2005, Plaintiff and Defendant T.I. Investments entered into a 6th Amendment to the Commercial Contract, a true and correct copy of which is attached as Exhibit "C".

13.     The Commercial Contract, as amended through the documents in Exhibits A, B and C, constitutes the entire agreement between Plaintiff and Defendant T.I. Investments.

14.     The transaction contemplated through the Commercial Contract, as amended, closed on July 20, 2005.

15.     Plaintiff did not sell or transfer any of its intellectual property rights in the Buccaneer Mark to T.I. Investments or any other party through the Commercial Contract as amended.

16.     At no time has Plaintiff otherwise licensed or authorized any Defendant to use the Buccaneer Mark or any similar mark.

17.     Despite having no rights to the Buccaneer Mark, Defendants, both individually and collectively, have used the Buccaneer Mark and/or a substantially similar mark at the resort real property in connection with the marketing and/or selling of the same or similar services as those previously offered by Plaintiff under the Buccaneer Mark.

18.     Despite demands from Plaintiff, Defendants continue to claim rights to the Buccaneer Mark, including the right to use the mark for the same or similar services as those offered by Plaintiff.

3

## COUNT I
## FALSE DESIGNATION OF ORIGIN UNDER § 43(a) OF LANHAM ACT

19.     Paragraphs 1 through 18 are incorporated by reference and realleged herein.

20.     This is an action for violations of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a) against all Defendants.

21.     Plaintiff's Buccaneer Mark has become uniquely associated with and identifies Plaintiff and its services.

22.     Plaintiff has developed substantial goodwill and customer recognition in the Buccaneer Mark.

23.     Defendants' use of the Buccaneer Mark is likely to cause confusion or mistake as to the affiliation, connection or association of Defendants and their services with Plaintiff and its services, or as to the origin, sponsorship, or approval of Defendants' services by Plaintiff.

24.     Defendants have willfully and intentionally used Plaintiff's Buccaneer Mark to trade on and benefit from the goodwill associated in the minds of consumers with Plaintiff's services.

25.     Defendants' use of Plaintiff's Buccaneer Mark constitutes false designation of origin in interstate commerce, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

26.     As a result of Defendants' violation of 15 U.S.C. §1125(a), Plaintiff has been damaged in an amount that is unknown and at this time cannot be ascertained.

27.     Unless enjoined by this Court, Defendants will continue to make false or misleading representations and Plaintiff will continue to suffer immediate and irreparable injury for which there is no adequate remedy at law.

## COUNT II
## FLORIDA COMMON LAW TRADEMARK INFRINGMENT

28.     Paragraphs 1 through 18 are incorporated by reference and realleged herein.

29.     This is an action for Florida Common Law Trademark Infringement against all Defendants.

30.     Through its extensive prior use, Plaintiff is the owner of the Buccaneer Mark.

31.     Plaintiff's Buccaneer Mark has become uniquely associated with and identifies Plaintiff and its services.

32.     Plaintiff has developed substantial goodwill and customer recognition in the Buccaneer Mark.

33.     Defendants are improperly using Plaintiff's Buccaneer Mark in connection with marketing and selling the same or similar services offered by Plaintiff.

34.     Defendants' actions will likely cause confusion as to the source and sponsorship of Defendants' services.

35.     Defendants' actions are in violation of the common law of the State of Florida.

36.     Defendants' infringement of Plaintiff's Buccaneer Mark has damaged Plaintiff in an amount that is unknown and at this time cannot be ascertained.

37.     Unless enjoined by this Court, Defendants will continue to infringe Plaintiff's mark and Plaintiff will continue to suffer immediate and irreparable injury for which there is no adequate remedy at law.

## PRAYER FOR RELIEF AS TO ALL COUNTS

WHEREFORE, Plaintiff prays that:

(1)     Defendants, their agents, servants, employees, attorneys, and all others in active concert or participation with it be preliminarily and permanently enjoined and restrained from

using the Buccaneer Mark or other similar designations or indicia which are likely to cause confusion, mistake, or deception with respect to Plaintiff's rights in and to the Buccaneer Mark;

(2)     All advertisements and or products in Defendants' possession, custody or control bearing the Buccaneer Mark or any similar mark or tradename be destroyed;

(3)     Plaintiff be awarded damages caused by Defendants' unlawful activities;

(4)     Defendants be held jointly and severally liable for monetary damages under the above Counts;

(5)     Plaintiff be awarded its reasonable attorney fees and costs pursuant to 15 U.S.C. §1117; and

(6)     Plaintiff be awarded such other and further relief as this Court may deem just and equitable.

## JURY TRIAL REQUESTED

Plaintiff hereby demands trial by jury on all issues so triable.

Joseph J. Weissman (trial counsel)
Florida Bar No. 0041424
Breton H. Permesly
Florida Bar No. 0014604
JOHNSON, POPE, BOKOR,
   RUPPEL & BURNS, LLP
P.O. Box 1100
Tampa, Florida 33601-1100
813-225-2500 (Phone)
813-223-7118 (Fax)

Counsel for Plaintiff

# 100267

6

## Commercial Contract
FLORIDA ASSOCIATION OF REALTORS®

1* **1. PURCHASE AND SALE:** _____ T.I. GROUP INVESTMENTS, LLC _____ ("Buyer")

2* agrees to buy and _____ BUCCANEER BEACH RESORT MOTEL, INC. _____ ("Seller")

3* agrees to sell the property described as: Street Address:   10800 Gulf Blvd and 10836 Gulf Blvd, Treasure Island

4* Florida, 33706, commonly known as the Buccaneer Beach Resort Motel.

5* Legal Description: Lots 6,7 and 10, Block J, City of Treasure Island, Blocks J and K according to the

6* plat thereof as filed in Plat Book 27, Pages 16 and 17 of the Public Records of Pinellas County, FL.

7* and the following Personal Property: Furniture, fixtures and equipment used in operation of the motel.

8*

9  (all collectively referred to as the "Property") on the terms and conditions set forth below. **The "Effective Date" of this Contract is**
10 **the date on which the last of the Parties signs the latest offer. Time is of the essence in this Contract.** Time periods of 5
11 days or less will be computed without including Saturday, Sunday, or national legal holidays and any time period ending on a
12 Saturday, Sunday or national legal holiday will be extended until 5:00 p.m. of the next business day.

13* **2. PURCHASE PRICE:**                                                          $        11,950,000.00

14* **(a)** Deposit held in escrow by _____ Stewart Title _____  $        75,000.00

15* **(b)** Additional deposit to be made within __90__ days from Effective Date      $        375,000.00

16* **(c)** Total mortgages (as referenced in Paragraph 3)                            $        0.00

17* **(d)** Other: _____ Additional deposit no later than December 20, 2004 _____     $        550,000.00

18* **(e)** Balance to close, subject to adjustments and prorations, to be made with cash, locally drawn   $        10,950,000.00
19  certified or cashier's check or wire transfer.

20* ~~3. THIRD PARTY FINANCING: Within_____ days from Effective Date ("Application Period"), Buyer will, at Buyer's expense, apply for~~

21* ~~third party financing in the amount of $_____ or ____% of the purchase price to be amortized over a period of ____~~

22* ~~years and due in no less than_____ years and with a fixed interest rate not to exceed ☐ ____% per year or variable interest rate not~~

23* ~~to exceed ☐ ____% at origination with a lifetime cap not to exceed _____% from initial rate, with additional terms as follows:~~

24* 

25 ~~Buyer will pay for the mortgagee title insurance policy and for all loan expenses. Buyer will timely provide any and all credit,~~

26 ~~employment, financial and other information reasonably required by any lender. Buyer will notify Seller immediately upon obtaining~~

27 ~~financing or being rejected by a lender. If Buyer, after diligent effort, fails to obtain a written commitment within _____ days from~~

28 ~~Effective Date ("Financing Period"), Buyer may cancel the Contract by giving prompt notice to Seller and Buyer's deposit(s) will be~~

29 ~~returned to Buyer in accordance with Paragraph 9.~~

30* **Buyer** (____) and **Seller** (____) acknowledge receipt of a copy of this page, which is page 1 of 5 Pages.

CC-2      © 1997 Florida Association of REALTORS®      All Rights Reserved
This software is licensed to [Jim Loncareki - CENTURY 21 .......... instanetforms.com.

**EXHIBIT**

**A**

32* ☒ other _____ **special warranty deed** _____, free of liens, easements and encumbrances of record or known to **Seller**,
33 but subject to property taxes for the year of closing; covenants, restrictions and public utility easements of record; and (list any
34* other matters to which title will be subject)
35*
36* provided there exists at closing no violation of the foregoing and none of them prevents **Buyer's** intended use of the Property as
37* **New Construction Condo Hotel Development** _____

38* **(a) Evidence of Title: Seller** will, at (check one) ☒ **Seller's** ☐ **Buyer's** expense and within __30__ days ☒ from Effective Date
39* ☐ prior to Closing Date ☐ from date **Buyer** meets or waives financing contingency in Paragraph 3, deliver to **Buyer** (check one)
40* ☒ a title insurance commitment by a Florida licensed title insurer and, upon **Buyer** recording the deed, an owner's policy in
41 the amount of the purchase price for fee simple title subject only to exceptions stated above.
42* ☐ an abstract of title, prepared or brought current by an existing abstract firm or certified as correct by an existing firm.
43 However, if such an abstract is not available to **Seller**, then a prior owner's title policy acceptable to the proposed insurer as
44 a base for reissuance of coverage. The prior policy will include copies of all policy exceptions and an update in a format
45 acceptable to **Buyer** from the policy effective date and certified to **Buyer** or **Buyer's** closing agent together with copies of all
46 documents recited in the prior policy and in the update.

47 **(b) Title Examination: Buyer** will, within 15 days from receipt of the evidence of title deliver written notice to **Seller** of title
48 defects. Title will be deemed acceptable to **Buyer** if (1) **Buyer** fails to deliver proper notice of defects or (2) **Buyer** delivers proper
49* written notice and **Seller** cures the defects within __60__ days from receipt of the notice ("Curative Period"). If the defects are
50 cured within the Curative Period, closing will occur within 10 days from receipt by Buyer of notice of such curing. **Seller** may
51 elect not to cure defects if **Seller** reasonably believes any defect cannot be cured within the Curative Period. If the defects are
52 not cured within the Curative Period, **Buyer** will have 10 days from receipt of notice of **Seller's** inability to cure the defects to
53 elect whether to terminate this Contract or accept title subject to existing defects and close the transaction without reduction in
54 purchase price. The party who pays for the evidence of title will also pay related title service fees including title and abstract
55 charges and title examination.

56 **(c) Survey:** (check applicable provisions below)
57* ☒ **Seller** will, within __10__ days from Effective Date, deliver to **Buyer** copies of prior surveys, plans, specifications, and
58* engineering documents, if any, and the following documents relevant to this transaction:
59* _____, prepared for **Seller** or in **Seller's**
60 possession, which show all currently and existing structures.
61* ☐ Buyer will, at ☐ Seller's ☐ Buyer's expense and within the time period allowed to deliver and examine title evidence,
62* obtain a current certified survey of the Property from a registered surveyor. If the survey reveals encroachments on the
63* Property or that the improvements encroach on the lands of another, ☐ Buyer will accept the Property with existing
64* encroachments ☐ such encroachments will constitute a title defect to be cured within the Curative Period.

65 **(d) Ingress and Egress: Seller** warrants that the Property presently has ingress and egress.

66 **(e) Possession: Seller** will deliver possession and keys for all locks and alarms to **Buyer** at closing.

67* **5. CLOSING DATE AND PROCEDURE:** This transaction will be closed in _____ **Pinellas** _____ County, Florida on
68* or before the __April 21__, __2005__ or within _____ days from Effective Date ("Closing Date"), unless otherwise extended
69* herein. ☒ **Seller** ☐ **Buyer** will designate the closing agent. **Buyer** and **Seller** will, within __310__ days from Effective Date, deliver to
70 Escrow Agent signed instructions which provide for closing procedure. If an institutional lender is providing purchase funds, lender
71 requirements will be in place, time of day, and closing procedures will control over any contrary provisions in this Contract.

72 **(a) Costs: Buyer** will pay taxes and recording fees on notes, mortgages and financing statements and recording fees for the deed.
73 **Seller** will pay taxes on the deed and recording fees for documents needed to cure title defects. If **Seller** is obligated to discharge
74 any encumbrance at or prior to closing and fails to do so, **Buyer** may use purchase proceeds to satisfy the encumbrances.

75 **(b) Documents: Seller** will provide the deed, bill of sale, mechanic's lien affidavit, assignments of leases, updated rent roll,
76 tenant and lender estoppel letters, assignments of permits and licenses, corrective instruments and letters notifying tenants of
77 the change in ownership/rental agent. If any tenant refuses to execute an estoppel letter, Seller will certify that information
78 regarding the tenant's lease is correct. If **Seller** is a corporation, **Seller** will deliver a resolution of its Board of Directors
79 authorizing the sale and delivery of the deed and certification by the corporate Secretary certifying the resolution and setting forth
80 facts showing the conveyance conforms with the requirements of local law. Seller will transfer security deposits to Buyer. Buyer
81 will provide the closing statement, mortgages and notes, security agreements and financing statements.

This software is licensed to [Jim Loncarski - CENTURY 21 Jim White CENTURY 21] www.instanetforms.com.

82* Buyer (___)(___) and Seller (___)(___) acknowledge receipt of a copy of this page, which is page 2 of 5 Pages.

84* ☐ as of _____ : real estate taxes, bond and assessment payments assumed by **Buyer**, interest,
85* rents, association dues, insurance premiums acceptable to **Buyer**, operational expenses and _____
86* If the amount of taxes and assessments for the current year cannot be ascertained, rates for the previous year will be used with due
87* allowance being made for improvements and exemptions. **Seller** is aware of the following assessments affecting or potentially
88* affecting the Property: _____ **None** _____
89   **Buyer** will be responsible for all assessments of any kind which become due and owing on or after Effective Date, unless the
90   improvement is substantially completed as of Closing Date, in which case **Seller** will be obligated to pay the entire assessment.
91   **(d) FIRPTA Tax Withholding:** The Foreign Investment in Real Property Act ("FIRPTA") requires **Buyer** to withhold at closing a
92   portion of the purchase proceeds for remission to the Internal Revenue Service ("I.R.S.") if **Seller** is a "foreign person" as defined
93   by the Internal Revenue Code. The parties agree to comply with the provisions of FIRPTA and to provide, at or prior to closing,
94   appropriate documentation to establish any applicable exemption from the withholding requirement. If withholding is required
95   and **Buyer** does not have cash sufficient at closing to meet the withholding requirement, **Seller** will provide the necessary funds
96   and **Buyer** will provide proof to **Seller** that such funds were properly remitted to the I.R.S.

97   ~~6. ESCROW: Buyer and Seller authorize~~
98* ~~Telephone: _____ Facsimile: _____ Address: _____~~
99* ~~_____ to act as "Escrow Agent"~~
100* ~~to receive funds and other items and, subject to clearance, disburse them in accordance with the terms of this Contract. Escrow~~
101* ~~Agent will deposit all funds received in ☐ a non-interest bearing escrow account ☐ an interest bearing escrow account with~~
102* ~~interest accruing to _____ with interest disbursed (check one) ☐ at closing~~
103* ~~☐ at _____ intervals. If Escrow Agent receives conflicting demands or has a good faith doubt as to Escrow~~
104  ~~Agent's duties or liabilities under this Contract, he/she may (a) hold the subject matter of the escrow until the parties mutually~~
105  ~~agree to its disbursement or until issuance of a court order or decision of arbitrator determining the parties' rights regarding the~~
106  ~~escrow or (b) deposit the subject matter of the escrow with the clerk of the circuit court having jurisdiction over the dispute. Upon~~
107  ~~notifying the parties of such action, Escrow Agent will be released from all liability except for the duty to account for items~~
108  ~~previously delivered out of escrow. If a licensed real estate broker, Escrow Agent will comply with applicable provisions of Chapter~~
109  ~~475, Florida Statutes. In any suit or arbitration in which Escrow Agent is made a party because of acting as agent hereunder or~~
110  ~~interpleads the subject matter of the escrow, Escrow Agent will recover reasonable attorneys' fees and costs at all levels, with~~
111  ~~such fees and costs to be paid from the escrowed funds or equivalent and charged and awarded as court or other costs in favor~~
112  ~~of the prevailing party. The parties agree that Escrow Agent will not be liable to any person for misdelivery to Buyer or Seller of~~
113  ~~escrowed items, unless the misdelivery is due to Escrow Agent's willful breach of this Contract or gross negligence.~~

114  **7. PROPERTY CONDITION: Seller** will deliver the Property to **Buyer** at the time agreed in its present "as is" condition, ordinary
115  wear and tear excepted, and will maintain the landscaping and grounds in a comparable condition. **Seller** makes no warranties
116  other than marketability of title. By accepting the Property "as is", **Buyer** waives all claims against **Seller** for any defects in the
117  property. (Check **(a)** or **(b)**)
118* ☐ **(a) As Is: Buyer** has inspected the Property or waives any right to inspect and accepts the Property in its "as is" condition.
119* ☒ **(b) Due Diligence Period: Buyer** will, at **Buyer's** expense and within __90__ days from Effective Date ("Due Diligence Period"),
120  determine whether the Property is suitable, in **Buyer's** sole and absolute discretion, for **Buyer's** intended use and development of
121  the Property as specified in Paragraph 4. During the Due Diligence Period, **Buyer** may conduct any tests, analyses, surveys and
122  investigations ("Inspections") which **Buyer** deems necessary to determine to **Buyer's** satisfaction the Property's engineering,
123  architectural, environmental properties; zoning and zoning restrictions; flood zone designation and restrictions; subdivision
124  regulations; soil and grade; availability of access to public roads, water, and other utilities; consistency with local, state and regional
125  growth management and comprehensive land use plans; availability of permits, government approvals and licenses; compliance with
126  American with Disabilities Act; absence of asbestos, soil and ground water contamination; and other inspections that **Buyer** deems
127  appropriate to determine the suitability of the Property for **Buyer's** intended use and development. **Buyer** shall deliver written notice
128  to **Seller** prior to the expiration of the Due Diligence Period of **Buyer's** determination of whether or not the Property is acceptable.
129  **Buyer's** failure to comply with this notice requirement shall constitute acceptance of the Property in its present "as is" condition.
130  **Seller** grants to **Buyer**, its agents, contractors and assigns, the right to enter the Property at any time during the Due Diligence
131  Period for the purpose of conducting Inspections; provided, however, that **Buyer**, its agents, contractors and assigns enter the
132  Property and conduct Inspections at their own risk. **Buyer** shall indemnify and hold **Seller** harmless from losses, damages, costs,
133  claims and expenses of any nature, including attorneys' fees at all levels, and from liability to any person, arising from the conduct of
134  any and all inspections or any work authorized by **Buyer**. **Buyer** will not engage in any activity that could result in a mechanic's lien
135  being filed against the Property without **Seller's** prior written consent. In the event this transaction does not close, (1) **Buyer** shall
136  repair all damages to the Property resulting from the Inspections and return the Property to the condition it was in prior to conduct of
137  the Inspections, and (2) **Buyer** shall, at **Buyer's** expense, release to **Seller** all reports and other work generated as a result of the
138  Inspections. Should **Buyer** deliver timely notice that the Property is not acceptable, **Seller** agrees that **Buyer's** deposit shall be
139  immediately returned to **Buyer** and the Contract terminated.

This software is licensed to [Jim Loncareki - CENTURY 21 Jim White CENTURY 21] www.instanetforms.com.

140* Buyer (____) (____) and Seller (____) (____) acknowledge receipt of a copy of this page, which is page 3 of 5 Pages.

142 conduct a final "walk-through" inspection of the Property to determine compliance with this paragraph and to ensure that all
143 Property is on the premises.
144 **(d) Disclosures:**
145 **1. Radon Gas:** Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient
146 quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state
147 guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained
148 from your county public health unit.
149 **2. Energy Efficiency:** Buyer may have determined the energy efficiency rating of the building, if any is located on the Real
150 Property.

151 ~~8. OPERATION OF PROPERTY DURING CONTRACT PERIOD:  Seller will continue to operate the Property and any business~~
152 ~~conducted on the Property in the manner operated prior to Contract and will take no action that would adversely impact the~~
153 ~~Property, tenants, lenders or business, if any. Any changes, such as renting vacant space, that materially affect the Property or~~
154 ~~Buyer's intended use of the Property will be permitted ☐ only with Buyer's consent ☐ without Buyer's consent.~~

155 **9. RETURN OF DEPOSIT:** Unless otherwise specified in the Contract, in the event any condition of this Contract is not met and
156 **Buyer** has timely given any required notice regarding the condition having not been met, **Buyer's** deposit will be returned in
157 accordance with applicable Florida laws and regulations.

158 **10. DEFAULT:**
159 **(a)** In the event the sale is not closed due to any default or failure on the part of **Seller** other than failure to make the title
160 marketable after diligent effort, **Buyer** may either (1) receive a refund of **Buyer's** deposit(s) or (2) seek specific performance. If
161 **Buyer** elects a deposit refund, **Seller** will be liable to Broker for the full amount of the brokerage fee.
162 **(b)** In the event the sale is not closed due to any default or failure on the part of **Buyer**, **Seller** may either (1) retain all deposit(s)
163 paid or agreed to be paid by **Buyer** as agreed upon liquidated damages, consideration for the execution of this Contract, and in
164 full settlement of any claims, upon which this Contract will terminate or (2) seek specific performance. ~~If Seller retains the~~
165 ~~deposit, Seller will pay the Listing and Cooperating Brokers named in Paragraph 12 fifty percent of all forfeited deposits retained~~
166 ~~by Seller (to be split equally among the Brokers) up to the full amount of the brokerage fee.~~

167 **11. ATTORNEY'S FEES AND COSTS:** In any claim or controversy arising out of or relating to this Contract, the prevailing party,
168 which for purposes of this provision will include **Buyer**, **Seller** and Broker, will be awarded reasonable attorneys' fees, costs and
169 expenses.

170 **12. BROKERS:** Neither **Buyer** nor **Seller** has utilized the services of, or for any other reason owes compensation to, a licensed
171 real estate Broker other than:
172* **(a) Listing Broker:** _____ Jim Loncarski _____
173* who is ☐ an agent of _____ CENTURY 21 Jim White & Ass., Inc. _____ ☒ a transaction broker ☐ a nonrepresentative
174* and who will be compensated by ☒ **Seller** ☐ **Buyer** ☐ both parties pursuant to ☐ a listing agreement ☒ other (specify)
175* 2%
176*
177*
178* **(b) Cooperating Broker:** _____ Launa Lishamer and Phyllis Newburg _____
179* who is ☐ an agent of _____ CENTURY 21 Jim White & Ass., Inc. _____ ☒ a transaction broker ☐ a nonrepresentative
180* and who will be compensated by ☐ **Buyer** ☒ **Seller** ☐ both parties pursuant to ☐ an MLS or other offer of compensation to a
181* cooperating broker ☒ other (specify) 2%
182*
183*
184*
185 (collectively referred to as "Broker") in connection with any act relating to the Property, including but not limited to inquiries,
186 introductions, consultations and negotiations resulting in this transaction. **Seller** and **Buyer** agree to indemnify and hold Broker
187 harmless from and against losses, damages, costs and expenses of any kind, including reasonable attorneys' fees at all levels, and
188 from liability to any person, arising from (1) compensation claimed which is inconsistent with the representation in this Paragraph, (2)
189 enforcement action to collect a brokerage fee pursuant to Paragraph 10, (3) any duty accepted by Broker at the request of **Buyer** or
190 **Seller**, which duty is beyond the scope of services regulated by Chapter 475, F.S., as amended, or (4) recommendations of or services
191 provided and expenses incurred by any third party whom Broker refers, recommends or retains for or on behalf of **Buyer** or **Seller**.

192* **13. ASSIGNABILITY; PERSONS BOUND:** This Contract may be assigned to a related entity, and otherwise ☒ is not assignable
193* ☐ is assignable. The terms "**Buyer**," "**Seller**" and "Broker" may be singular or plural. This Contract is binding upon **Buyer**, **Seller**
194 and their heirs, personal representatives, successors and assigns (if assignment is permitted).

195* Buyer (____)(____) and Seller (____)(____) acknowledge receipt of a copy of this page, which is page 4 of 5 Pages.

| | | |
|---|---|---|
| 197* ☐ Arbitration | ☐ Seller Warranty | ☐ Existing Mortgage |
| 198* ☒ Section 1031 Exchange | ☒ Coastal Construction Control Line | ☒ Other _____ Other Terms |
| 199* ☐ Property Inspection and Repair | ☒ Flood Area Hazard Zone | ☐ Other _____ And Conditions |
| 200* ☐ Seller Representations | ☐ Seller Financing | ☐ Other _____ |

201 **15. MISCELLANEOUS:** The terms of this Contract constitute the entire agreement between **Buyer** and **Seller**. Modifications of
202 this Contract will not be binding unless in writing, signed and delivered by the party to be bound. Signatures, initials, documents
203 referenced in this Contract, counterparts and written modifications communicated electronically or on paper will be acceptable for
204 all purposes, including delivery, and will be binding. Handwritten or typewritten terms inserted in or attached to this Contract prevail
205 over preprinted terms. If any provision of this Contract is or becomes invalid or unenforceable, all remaining provisions will continue
206 to be fully effective. This Contract will be construed under Florida law and will not be recorded in any public records. Delivery of any
207 written notice to any party's agent will be deemed delivery to that party.

208 **THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE ADVICE OF AN ATTORNEY**
209 **PRIOR TO SIGNING. BROKER ADVISES BUYER AND SELLER TO VERIFY ALL FACTS AND REPRESENTATIONS THAT ARE**
210 **IMPORTANT TO THEM AND TO CONSULT AN APPROPRIATE PROFESSIONAL FOR LEGAL ADVICE (FOR EXAMPLE,**
211 **INTERPRETING CONTRACTS, DETERMINING THE EFFECT OF LAWS ON THE PROPERTY AND TRANSACTION, STATUS OF**
212 **TITLE, FOREIGN INVESTOR REPORTING REQUIREMENTS, ETC.) AND FOR TAX, PROPERTY CONDITION, ENVIRONMENTAL AND**
213 **OTHER SPECIALIZED ADVICE. BUYER ACKNOWLEDGES THAT BROKER DOES NOT OCCUPY THE PROPERTY AND THAT ALL**
214 **REPRESENTATIONS (ORAL, WRITTEN OR OTHERWISE) BY BROKER ARE BASED ON SELLER REPRESENTATIONS OR PUBLIC**
215 **RECORDS UNLESS BROKER INDICATES PERSONAL VERIFICATION OF THE REPRESENTATION. BUYER AGREES TO RELY**
216 **SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND GOVERNMENTAL AGENCIES FOR VERIFICATION OF THE PROPERTY**
217 **CONDITION, SQUARE FOOTAGE AND FACTS THAT MATERIALLY AFFECT PROPERTY VALUE.**

218* **DEPOSIT RECEIPT:** Deposit of $_____ by ☐ _____ check ☐ other _____ received on
219* _____ , _____ by _____
220* _____
Signature of Escrow Agent

221 **OFFER: Buyer** offers to purchase the Property on the above terms and conditions. Unless acceptance is signed by **Seller** and a
222* signed copy delivered to **Buyer** or **Buyer's** agent no later than _____ ☐ a.m. ☐ p.m. on _____ , _____
223 **Buyer** may revoke this offer and receive a refund of all deposits.

224* Date: 5/15/04 **BUYER:** T.I. GROUP INVESTMENTS, LLC, by JOHN LODER _____ Tax ID No: _____
225* Title: Managing Member _____ Telephone: _____ Facsimile: _____
226* Address: _____

227* Date: _____ **BUYER:** _____ Tax ID No: _____
228* Title: _____ Telephone: _____ Facsimile: _____
229* Address: _____

230* **ACCEPTANCE: Seller** accepts **Buyer's** offer and agrees to sell the Property on the above terms and conditions (☐ subject to the
231 attached counter offer).

232* Date: 5/19/04 **SELLER:** BUCCANEER BEACH RESORT MOTEL by BOJA J. LONCARSKI _____ Tax ID No: _____
233* Title: Vice President _____ Telephone: _____ Facsimile: _____
234* Address: _____

235* Date: _____ **SELLER:** _____ Tax ID No: _____
236* Title: _____ Telephone: _____ Facsimile: _____
237* Address: _____

238* **Buyer** ( ___ ) and **Seller** ( ___ ) acknowledge receipt of a copy of this page, which is page 5 of 5 Pages.

The Florida Association of REALTORS makes no representation as to the legal validity or adequacy of any provision of this form in any specific transaction. This
standardized form should not be used in complex transactions or with extensive riders or additions. This form is available for use by the entire real estate industry
and is not intended to identify the user as a REALTOR. REALTOR is a registered collective membership mark which may be used only by real estate licensees who are
members of the NATIONAL ASSOCIATION OF REALTORS and who subscribe to its Code of Ethics.
The copyright laws of the United States (17 U.S. Code) forbid the unauthorized reproduction of this form by any means including facsimile or computerized forms.

CC-2    © 1997 Florida Association of REALTORS®        All Rights Reserved

This software is licensed to [Jim Loncarski - CENTURY 21 Jim White CENTURY 21] www.instanetforms.com.

# Commercial Contract:
## Optional Clauses
### FLORIDA ASSOCIATION OF REALTORS®



Addendum No. __1__ to the Commercial Contract between _____ **_BUCCANEER BEACH RESORT MOTEL, INC._** _____ ("Seller")

and _____ **_T.I. GROUP INVESTMENTS, LLC_** _____ ("Buyer") concerning the sale and purchase of the Property

described as: _10800 AND 10836 Gulf Blvd., commonly known as the Buccaneer Beach Resort Motel, Treasure Island, FL_

**The clauses below shall be incorporated into the Contract referenced above only if initialed by all parties:**

**Seller Initials   Buyer Initials**

 **SECTION 1031 EXCHANGE:** ☒ **Buyer**  ☐ **Seller** requests a Section 1031 tax deferred exchange in connection with this transaction. The parties agree to cooperate in effecting the exchange in accordance with Section 1031 of the Internal Revenue Code, including execution of any documents that may be reasonably necessary to effect the exchange; provided that (1) the party requesting the exchange shall bear all additional costs incurred in connection with the exchange, (2) the non-requesting party shall not be obligated to delay the closing or to execute any note, contract, or other document providing for any personal liability which would survive the exchange.

The Florida Association of REALTORS makes no representation as to the legal validity or adequacy of any provision of this form in any specific transaction. This standardized form should not be used in complex transactions or with extensive riders or additions. This form is available for use by the entire real estate industry and is not intended to identify the user as a REALTOR. REALTOR is a registered collective membership mark which may be used only by real estate licensees who are members of the NATIONAL ASSOCIATION OF REALTORS and who subscribe to its Code of Ethics. The copyright laws of the United States (17 U.S. Code) forbid the unauthorized reproduction of this form by any means including facsimile or computerized forms.

OC-3b   ©1998 Florida Association of REALTORS®      All Rights Reserved          This is page       of       pages



Printed On: Friday, May 14, 2004 12:03:45

# Commercial Contract:
## Optional Clauses
### FLORIDA ASSOCIATION OF REALTORS®



Addendum No. __2__ to the Commercial Contract between _____ **BUCCANEER BEACH RESORT MOTEL, INC.** _____ ("Seller")

and _____ **T.I. GROUP INVESTMENTS, LLC** _____ ("Buyer") concerning the sale and purchase of the Property

described as: **10800 AND 10836 Gulf Blvd., commonly known as the Buccaneer Beach Resort Motel, Treasure Island, FL**

**The clauses below shall be incorporated into the Contract referenced above only if initialed by all parties:**

**Seller Initials   Buyer Initials**

_____ ; _____ **COASTAL CONSTRUCTION CONTROL LINE:** All or part of the Property is located seaward of the Coastal Construction Control Line as defined in Florida Statute 161.053, and is therefore subject to government regulation. Florida law requires **Seller** to provide **Buyer** with an affidavit, or a survey meeting the requirements of chapter 472 of the Florida Statutes, delineating the location of the CCCL on the Property at or prior to closing, unless **Buyer** waives this requirement in writing. **Buyer** ☒ waives the right to receive a CCCL affidavit or survey. ☐ requests a CCCL affidavit or survey within the time allowed for **Seller** to deliver title evidence.

The Florida Association of REALTORS makes no representation as to the legal validity or adequacy of any provision of this form in any specific transaction. This standardized form should not be used in complex transactions or with extensive riders or additions. This form is available for use by the entire real estate industry and is not intended to identify the user as a REALTOR. REALTOR is a registered collective membership mark which may be used only by real estate licensees who are members of the NATIONAL ASSOCIATION OF REALTORS and who subscribe to its Code of Ethics. The copyright laws of the United States (17 U.S. Code) forbid the unauthorized reproduction of this form by any means including facsimile or computerized forms.

OC-3f    ©1998 Florida Association of REALTORS®        All Rights Reserved          This is page _____ of ____ pages



# Commercial Contract:
# Optional Clauses
### FLORIDA ASSOCIATION OF REALTORS®



Addendum No. __3__ to the Commercial Contract between _____ **_BUCCANEER BEACH RESORT MOTEL, INC._** _____ ("Seller")

and _____ **_T.I. GROUP INVESTMENTS, LLC_** _____ ("Buyer") concerning the sale and purchase of the Property

described as: _10800 AND 10836 Gulf Blvd., commonly known as the Buccaneer Beach Resort Motel, Treasure Island, FL_

**The clauses below shall be incorporated into the Contract referenced above only if initialed by all parties:**

Seller Initials    Buyer Initials

_____ ; _____ **FLOOD AREA HAZARD ZONE:** The Property is located in a ☒ Special Flood Hazard Area ☒ Coastal High Hazard Area. Flood insurance on structures may be required as a condition of financing. ~~If the first year premium of flood insurance required by a lender exceeds $ _____ per year, Buyer may terminate this Contract unless either party elects, within _____ days of notification of the excess amount, to pay the excess.~~ In addition, there may be restrictions on rebuilding in the event of casualty or substantial modification to the structure. **Buyer** is advised to verify all such restrictions with the appropriate government agencies. **Seller's** flood insurance policy ☐ is ☒ is not transferable to or assumable by **Buyer**.

The Florida Association of REALTORS makes no representation as to the legal validity or adequacy of any provision of this form in any specific transaction. This standardized form should not be used in complex transactions or with extensive riders or additions. This form is available for use by the entire real estate industry and is not intended to identify the user as a REALTOR. REALTOR is a registered collective membership mark which may be used only by real estate licensees who are members of the NATIONAL ASSOCIATION OF REALTORS and who subscribe to its Code of Ethics. The copyright laws of the United States (17 U.S. Code) forbid the unauthorized reproduction of this form by any means including facsimile or computerized forms.

OC-3g   ©1998 Florida Association of REALTORS®      All Rights Reserved      This is page _____ of _____ pages.



Printed On: Wednesday, May 19, 2004 14:13:41

# COMMERCIAL CONTRACT
## Other Terms and Conditions

Addendum No. 4 to the Commercial Contract between BUCCANEER BEACH RESORT MOTEL, INC. ("Seller") and T.I. GROUP INVESTMENTS, LLC ("Buyer") concerning the sale and purchase of the Property described as 10800 and 10836 Gulf Blvd., commonly known as the Buccaneer Beach Resort Motel, Treasure Island, FL.

CONDUCT OF DUE DILIGENCE: Buyer and Seller agree to use all efforts to maintain the confidentiality of this Contract and sale of the Property. On site Property inspections will be scheduled in advance by agreement of the parties. All efforts will be made not to inform the guests and employees of the Buccaneer Beach Resort Motel of the sale of the Property until December 21, 2004.

ESCROW: Buyer and Seller authorize Stewart Title, 4134 Central Avenue, St. Petersburg, FL  33711, phone – 727-327-5775, fax – 727-327-3791, to act as "Escrow Agent" to receive funds and other items and, subject to clearance, disburse them in accordance to the terms of this Contract.

Escrow Agent will deposit all funds received in an interest bearing account with interest accruing to Buyer (absent Buyer's default) to be disbursed at Closing. Absent timely written notice from Buyer within the Due Diligence Period that the Property is not acceptable and the Contract terminated, all deposits, additional deposits, any future additional deposits, and any accrued interest thereon are agreed upon liquidated damages for Buyer' default of this Contract.  No commissions will be paid or owed upon liquidated damages.

Absent timely written notice from Buyer within the Due Diligence period that the Property is not acceptable and the Contract terminated, Escrow Agent is hereby authorized and directed to immediately release all deposits, additional deposits, and any accrued interest thereon to Seller upon any failure by Buyer to make timely additional deposits or failure to close due to any default or failure by Buyer.

The parties agree Escrow Agent will not be liable for misdelivery to Buyer or Seller of escrowed items, unless the misdelivery is due to Escrow Agent's willful breach of this Contract or gross negligence.

OPERATION OF PROPERTY DURING CONTRACT PERIOD. Buyer anticipates demolishing existing buildings on the Property for construction of a new Condo Hotel development. Seller will operate the business in anticipation of such, informing Customers that operations of the Property as the existing Buccaneer Beach Resort Motel are expected to end. Seller will stop taking reservations for guests in anticipation of the closing of this transaction.

ALLOCATION: Allocation of the purchase price for furniture, fixtures and equipment is -$60,0000.00. The balance of the purchase price is for land and buildings. All furniture fixtures and equipment sold AS IS. It is clearly understood the Buccaneer statue on top of the roof of the property, near the pool area, is not included in this sale. Should Buyer so desire, Seller will allow the Buccaneer Statue to remain in place up to one year after closing. Cost of removal of the Buccaneer Statue to be paid by Seller. Buyer agrees to allow Seller access to the Property for removal of the Buccaneer Statue. If necessary, agreements concerning the post closing rights of the parties for removal of the Buccaneer Statue will be prepared and executed at closing.

*$60,000.*

BUYER: _____
  T.I. GROUP INVESTMENTS, LLC
  By: JOHN LODER, Managing Member

SELLER: _____
  BUCCANEER BEACH RESORT MOTEL, INC.
  By: BOJA J. LONCARSKI, Vice President

Page 2 of addendum No. 4

# MODIFICATION TO COMMERCIAL CONTRACT

The following provisions modify the Commercial Contract, Effective Date May 19, 2004 between T.I. GROUP INVESTMENTS, LLC (Buyer) and BUCCANEER BEACH RESORT MOTEL, INC. (Seller) concerning the property located at 10800 Gulf Blvd. and 10836 Gulf Blvd., Treasure Island Florida, 33706, commonly known as the Buccaneer Beach Resort Motel (Property).

1. PURCHASE PRICE:  $12,400,000.00

2. CLOSING DATE:  July 20, 2005

3. ADDITIONAL DEPOSIT:  Buyer shall make an additional deposit of $450,000.00 by no later than February 17, 2005.  All deposits shall then total $1,450,000.00.

4. BUCCANEER STATUE:  The Buccaneer statue on top of the roof of the Property, near the pool area, is included in this sale and shall convey to Buyer.

5. BUYER ACCESS:  Buyer has requested access to the Property in order to perform certain surveys, testing and assessments for pre demolition requirements and in order to more easily facilitate financing for Buyer's project.  Seller agrees to allow access to the property for these activities.  Buyer, its agents and contractors enter the property and conduct these surveys, testing and assessments at their own risk.  Buyer shall indemnify and hold Seller harmless from losses, damages, costs, claims and expenses of any nature, including attorney fees at all levels, and from liability to any person, arising from the conduct of surveys, testing and assessments or any work authorized by Buyer.

It is clearly understood and agreed that the Due Diligence Period pursuant to this Commercial Contract has expired and Buyer has accepted the Property in its present "as is" condition.

Page 1



EXHIBIT

B

09

6. FENCING: In the event Seller chooses to cease operations as a motel prior to the closing of this transaction, Buyer agrees to fence off the property so as not to allow passersby free access to the property. Seller will give Buyer 30 days notice to arrange for such fencing.

7. RELEASE OF ESCROW:

   a. Buyer and Seller authorize and direct Escrow Agent to immediately release and disburse to Seller (or Seller's intermediary for 1031 exchange purposes) all deposits, additional deposits, and any future additional deposits held or hereafter to be held by Escrow Agent upon the execution by Seller, and receipt by Escrow Agent, of a Special Warranty Deed conveying the subject property to Buyer on the form attached hereto as Exhibit "A", and a Bill of Sale conveying furniture, fixtures and equipment to Buyer on the form attached hereto as Exhibit "B", and Lien Affidavit on the form attached hereto as Exhibit "C";

   b. Buyer and Seller authorize and direct Escrow Agent to simultaneously release and disburse to Buyer all accrued interest earned on the aforementioned deposits;

   c. Escrow Agent is directed to hold in escrow the Special Warranty Deed, Bill of Sale and Lien Affidavit, to be released from escrow to Buyer at Closing upon payment by Buyer to Seller of all amounts owed in accordance to the terms of this Commercial Contract.

8. SELLER'S REPRESENTATIONS: Seller has current encumbrances on the Property of up to $3,700,000.00. Seller covenants and agrees not to cause or incur any additional encumbrances in excess of $3,700,000.00 to the Property without the consent of the Buyer.

9. Escrow Agent shall not be liable to any party or person for misdelivery of the escrowed funds to Seller (or Seller's intermediary for 1031 exchange purposes) or Buyer, unless such misdelivery is due to willful breach of the provisions of this Commercial Contract or gross negligence of the Escrow Agent.

10. Buyer and Seller agree that, subject to the provisions contained in this Modification To Commercial Contract, all other provisions and obligations to the other party as otherwise contained in the Commercial Contract remain unchanged and in full force and effect.

Buyer: _____   Date: 2/17/05
TI. GROUP INVESTMENTS, LLC
By: JOHN LODER, Managing Member


Seller: _____   Date: 0/17/05
BUCCANEER BEACH RESORT
MOTEL, INC.
By: BOJA J. LONCARSKI, Vice President

Page 3

Return to:
Name:     STEWART TITLE OF PINELLAS, INC.
Address:  4134 CENTRAL AVENUE
          ST. PETERSBURG, FL 33711
This Instrument Prepared by:  WILLIAM R. MCALDUFF
          STEWART TITLE OF PINELLAS, INC.
          4134 CENTRAL AVENUE
          ST. PETERSBURG, FL 33711
as a necessary incident to the fulfillment of conditions
contained in a title insurance commitment issued by it.
Property Appraisers Parcel Identification (Folio) Number(s):
23/31/15/91926/010/0060
Grantee(s) I.D.#
FILE NO:   04158839

# SPECIAL
## WARRANTY DEED

This Special Warranty Deed Made this      day of
by BUCCANEER BEACH RESORT MOTEL, INC. , A FLORIDA CORPORATION

a corporation existing under the laws of  FLORIDA          , and having its place of business at

hereinafter called the grantor, to  T.I. GROUP INVESTMENT, LLC., A FLORIDA LIMITED
LIABILITY COMPANY

whose post office address is:

hereinafter called the grantee,
WITNESSETH: That grantor, for and in consideration of the sum of $10.00 Dollars, and other valuable considerations, receipt
whereof is hereby acknowledged, by these presents does grant, bargain, sell, alien, remise, release, convey and confirm unto grantee,
all that certain land situate in  Pinellas          County, Florida, viz:
LOTS 6, 7 AND 10, BLOCK "J", CITY OF TREASURE ISLAND-BLOCKS-"J"
AND "K", according to the Plat thereof as recorded in Plat Book
27, Pages 16 and 17, Public Records of Pinellas County, Florida.

TOGETHER with all the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.
To Have and to Hold, the same in fee simple forever.

GRANTOR'S WILL WARRANT and forever defend the right and title to the above-described real property unto the
Grantees against the claims of all person, claiming by, through or under Grantor's, but not otherwise.
(Wherever used herein the terms "grantor" and "grantee" included all the parties to this instrument, and the heirs, legal representatives and assigns of individuals, and the
successors and assigns of corporation.)

IN WITNESS WHEREOF, the grantor has caused these presents to be executed
in its name, and its corporate seal to be hereunto affixed, by its proper officers thereunto
duly authorized, the day and year first above written.

ATTEST:_____           BUCCANEER BEACH RESORT MOTEL,
         Secretary                   INC.
Signed, sealed and delivered in the presence of:

Witness Signature: _____
Witness Printed Name: _____    BY_____
Witness Signature: _____       BOJA J. LONCARSKI, VICE
Witness Printed Name: _____       PRESIDENT

STATE OF FLORIDA
COUNTY OF PINELLAS

The foregoing instrument was acknowledged before me this      day of          by
BOJA J. LONCARSKI as VICE PRESIDENT of BUCCANEER BEACH RESORT MOTEL,
INC., a FLORIDA corporation,

on behalf of the corporation. He/she is personally known to me or has produced driver license(s) as identification.

My Commission expires:                    Printed Name: _____
                                          Notary Public
                                          Serial Number



PAGE 2/2; RCVD AT 2/14/2005 12:45:06 PM [Eastern Standard Time] ; SVR:TPAFAX01/1 ; DNIS:3955 ; CSID:727 585 4209 ; DURATION (mm-ss):00-38

PREPARED BY AND RETURN TO:
Richard I. Kantner, Jr., Esquire
Joseph F. Pippen, Jr. & Associates
10225 Ulmerton Rd., #11
Largo, FL 33771

## BILL OF SALE, ABSOLUTE

KNOW ALL MEN BY THESE PRESENTS, that BUCCANEER BEACH RESORT MOTEL, INC., party of the first part, for and in consideration of the sum of SIXTY THOUSAND AND NO/100 DOLLARS ($60,000.00) and other good and valuable consideration to it paid by T.I. GROUP INVESTMENTS, LLC, party of the second part, the receipt whereof is hereby acknowledged, has granted, bargained, sold, transferred and delivered, and by these presents does grant, bargain, sell, transfer and deliver unto the said party of the second part, the following goods and chattels located at 10800 and 10836 Gulf Boulevard (Buccaneer Beach Resort Motel), Treasure Island, Florida:

furniture, fixtures (including Buccaneer statue), and equipment

TO HAVE AND TO HOLD the same unto the said party of the second part, their executors, administrators and assigns forever.

AND the undersigned does, for itself and its executors and administrators, covenant to and with said party of the second part, their executors, administrators and assigns, that it is the lawful owner of the said goods and chattels, that they are free from all encumbrances; that it has good right to sell the same aforesaid, and that it will warrant and defend the sale of the said property, goods and chattels hereby made, unto the said party of the second part, their executors, administrators and assigns against the lawful claims and demands of all persons whomsoever.

IN WITNESS WHEREOF, the undersigned has set his/her hand and seal this _____ day of _____, 2005.

BUCCANEER BEACH RESORT MOTEL, INC.

By:_____
BOJA J. LONCARSKI, V.P.

STATE OF FLORIDA
COUNTY OF PINELLAS

The foregoing instrument was acknowledged before me this _____ day of _____, 2005, by BOJA J. LONCARSKI, V.P., BUCCANEER BEACH RESORT MOTEL, INC., who is (are) personally known to me or who has produced as identification and who did/did not take an oath.

My commission expires:

_____
Notary Public

EXHIBIT
"B"

@ 002/002          PIPPEN AND ASSOC          727 585 4209   FAX 13:48 2005/14/02

Jan 11 05 12:34p      HULT / LONCARSKI       17273608668        p.3

# LIEN AFFIDAVIT

DATE:                                           FILE NO. 04158839

BEFORE ME, the undersigned authority, personally appeared
BOJA J. LONCARSKI AS VICE PRESIDENT OF BUCCANEER BEACH RESORT
MOTEL, INC.

("Affiant"), who first being duly sworn, deposes and says:

1. That affiant is the owner of that certain real property known as
   10800 GULF BOULEVARD, TREASURE ISLAND, FL 33706

and being legally described as:
   LOTS 6, 7 & 10, BLK J. CITY OF TREASURE ISLAND

2. That Affiant has possession of the Property, and there is no other person or entity in possession who has any right in the Property.

3. That no "Notice of Commencement", as contemplated by Section 713.13 Florida Statutes, has been recorded or posted affecting the Property, nor has it received a "Notice to Owner", as contemplated by Section 713.06(2), Florida Statutes, and there are no unrecorded labor, mechanics' or materialmen's liens against the Property, and no material has been furnished to or labor performed upon the Property except such that have been paid for in full.

4. There are no unrecorded easements, unpaid bills, liens, or assessments for sewers, paving, or other public utilities or improvements made by any governmental authority, and that no notice has been received for any public hearing regarding future or pending assessments for improvements by any governmental instrumentality which are not unpaid against the Property.

5. That Affiant is the owner of, and there are no claims or liens whatsoever of any kind or description against the equipment or fixtures located in the improvements on the Property which is being conveyed.

6. That there are no existing leases or contracts for sale or contracts for deed or other contractual rights or mortgage commitments affecting the Property.

7. That there are no judgments, liens, mortgages, or other claims, recorded or unrecorded, against the Property other than those shown in the search made by Stewart Title of Pinellas, Inc..

8. That all due and payable ad valorem (real estate) taxes and tangible personal property taxes have been paid and that I have (have not) applied for homestead exemption for ___2004___ taxes on said property.

9. THIS AFFIDAVIT is made for the purpose of inducing Stewart Title of Pinellas, a Florida Corporation, and Stewart Title Guaranty Company, a Texas Corporation, to issue a title insurance policy on the above described property, and to disburse funds held by Stewart Title of Pinellas, Inc.. , as Escrow Agent.

                                    BUCCANEER BEACH RESORT MOTEL, INC.

Signed, sealed, and delivered in the presence of:

_____         BY: _____
                                    BOJA J. LONCARSKI
                                    VICE PRESIDENT
_____


_____


_____

STATE OF  FLORIDA               COUNTY OF  PINELLAS

   The foregoing instrument was acknowledged before me this _____ day of
by   BOJA J. LONCARSKI AS VICE PRESIDENT OF
     BUCCANEER BEACH RESORT MOTEL, INC.
who has produced                            as identification.


                        _____
                             Notary Public


EXHIBIT
"C"

# SIXTH AMENDMENT TO
## COMMERCIAL CONTRACT

**THIS SIXTH AMENDMENT TO COMMERCIAL CONTRACT** (this "Sixth Amendment") is entered into on this 4th day of March, 2005 (the "Sixth Amendment Effective Date"), by and between **T.I. GROUP INVESTMENTS, LLC**, a Florida limited liability company ("Buyer"), and **BUCCANEER BEACH RESORT MOTEL, INC.**, a Florida corporation ("Seller"), with reference to the following:

## RECITALS

**WHEREAS**, Seller and Buyer entered into that certain Commercial Contract dated effective May 19, 2004 (the "Initial Contract"), as amended by: (i) those certain Commercial Contract Optional Clause Addendums Numbered 1, 2, and 3 (collectively, the "Initial Addendums"), (ii) that certain Commercial Contract Other Terms and Conditions Addendum Numbered 4 (the "Fourth Addendum"), and (iii) that certain Modification to Commercial Contract dated February 17, 2005 (the "Modification") (hereinafter, the Initial Contract, the Initial Addendums, the Fourth Addendum, and the Modification are collectively referred to as the "Contract"), for the sale and purchase of real and personal property more particularly described in the Contract (collectively, the "Property");

**WHEREAS**, following the execution of the Modification, Seller issued a Notice of Default to Buyer dated February 18, 2005 (the "Notice of Default"), which Buyer disputes;

**WHEREAS**, Seller and Buyer now desire to settle their disagreement over the Notice of Default, cancel the Notice of Default and amend the Contract on the terms and conditions stated in this Sixth Amendment.

**NOW THEREFORE**, in consideration of the mutual covenants contained herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto agree as follows:

1.      <u>Recitals</u>.  The above Recitals are true and correct and incorporated herein by this reference.

2.      <u>Withdrawal of Notice of Default</u>.  The Notice of Default is hereby withdrawn in its entirety by Seller.

3.      <u>Brokers</u>.  Section 12 of the Initial Contract is hereby modified as follows:  the compensation to the listing brokers shall be one percent (1%), and the compensation to the cooperating brokers shall be one percent (1%). Century 21 Jim White and Associates, Inc., Launa Lishamer, Phyllis Newburg, and Boja J. Loncarski agree with this compensation. By their respective execution of this Sixth Amendment, the broker and the agents approve of this compensation and agree to release both Seller and Buyer from any and all liability related to such reductions in their commission or compensation and all matter related thereto.

**EXHIBIT**

_C_

4.    **Additional Consideration; New Purchase Price**.  Buyer hereby agrees to pay Seller an additional Five Thousand and 00/100 Dollars ($5,000.00) at Closing for the personal property being sold in connection with the Contract.  Thus, the total Purchase Price under the Contract is Twelve Million Four Hundred Five Thousand and 00/100 Dollars ($12,405,000.00).  Seller shall have no rights or entitlements to any personal property located on the real estate comprising the Property or within the improvements located thereon as of the Effective Date of the Contract.

5.    **Additional Deposit**.  Section 3 of the Modification is hereby modified so that the Additional Deposit (as defined in the Modification) shall be paid by Buyer to Stewart Title of Pinellas, Inc. (as Escrow Agent), located at 4134 Central Avenue, St. Petersburg, Florida 33711, simultaneously with the execution of this Sixth Amendment.  Seller hereby acknowledges and agrees that, should Seller not fully perform all terms of the Contract and completely and timely close the transaction contemplated thereunder with Buyer, then Seller shall immediately return to Buyer (without Buyer waiving any rights to specific performance or any other legal remedy) all deposits made to or otherwise delivered to Seller, including interest at the prevailing prejudgment interest rate allowed by law from the date of written demand made to Seller for same.

6.    **Closing Date**.  Pursuant to Section 2 of the Modification, Seller and Buyer acknowledge and agree that the closing date for the purchase and sale transaction contemplated under the Contract (the "Closing") is July 20, 2005.  Seller and Buyer further agree that Buyer may elect, in Buyer's sole and absolute discretion, to perform the Closing on an earlier date not to occur before July 11, 2005, by providing Seller with at least five (5) days' prior written notice.

7.    **Closing Documents**.  Section 7a. of the Modification is hereby amended to indicate that Seller hereby agrees to re-execute (and, if applicable, notarize and witness) at Closing any special warranty deed, bill of sale, and lien affidavit that is submitted into escrow by Seller pursuant to the terms of Section 7a. of the Modification, on the forms attached thereto, if the title company or buyer's lender determine, in their sole and absolute discretion, that such action is necessary for Seller to deliver marketable title to the Property to Buyer at Closing in accordance with the terms of Section 4 of the Initial Contract or otherwise.  Furthermore, Buyer agrees to execute at Closing an appropriate gap affidavit and any other title affidavit that is required by the title company to delete the standard and gap exceptions from the title policies to be issued to Buyer and/or Buyer's lender at Closing.

8.    **Ratification**.  Except as modified herein, the Contract shall remain unmodified and in full force and effect, including but not limited to Buyer's rights of specific performance, which shall include the rights of specific performance for all terms of this Sixth Amendment.  Time is of the essence.

9.    **Attorneys' Fees**.  In the event any suit or other legal proceeding is brought by a party or parties to enforce any of the provisions of this Sixth Amendment, the prevailing party or parties shall be entitled to recover from the non-prevailing party or parties reasonable attorneys' fees and costs, including attorneys' fees and costs incurred in any appellate or bankruptcy suit, proceeding, or arbitration.

10.    **Notices**. Any notices required to be given pursuant to this Sixth Amendment shall be sent by facsimile or certified mail, return receipt requested, to Seller and Buyer as follows:

| If to Buyer, then: | With a copy to: |
|---|---|
| T.I. Group Investments, LLC<br>The Kress Building, Suite M-4<br>c/o John Loder<br>475 Central Avenue<br>Petersburg, Florida 33701<br>Phone (727) 894-6084<br>Fax (727) 894-6138<br>Email: jloder@sunvista.com | David S.Bernstein, Esq.<br>Ruden McClosky<br>150 Second Avenue North, Suite 1700<br>St. Petersburg, Florida 33701<br>Phone (727) 502-8200<br>Fax (727) 502-8282<br>Email: david.bernstein@ruden.com |
| If to Seller, then: | With a copy to: |
| Buccaneer Beach Resort Motel, Inc.<br>10800 Gulf Boulevard<br>Treasure Island, Florida 33706<br>Phone (727) 502-8200<br>Fax (727) 502-8668<br>Email: jl@tampabay.rr.com | Marion Hale, Esq.<br>Johnson Pope Bokor Ruppel & Burns<br>P.O. Box 1368<br>Clearwater, Florida 33757-1368<br>Phone (727) 461-1818<br>Fax (727) 441-8617<br>Email: marionh@jpfirm.com |

11.    **Binding Effect**. This Sixth Amendment shall be binding upon the parties hereto and their successors and assigns.

12.    **Escrow Disbursements**. The parties hereto agree that Escrow Agent will not be liable for misdelivery to Buyer or Seller of escrowed items, unless the misdelivery is due to Escrow Agent's willful breach of this Contract or gross negligence. The parties further instruct and authorize Escrow Agent to disburse the deposits and all accrued interest earned thereon to Seller provided the conditions of Section 7a. of the Modification have been satisfied.

13.    **Counterpart/Facsimile Execution**. This Sixth Amendment may be executed in multiple counterparts, each of which shall be deemed to be an original, but all of which when taken together shall constitute one and the same instrument. For purposes of executing this Sixth Amendment, facsimile signatures are acceptable.

**(The Remainder of This Page Was Intentionally Left Blank)**

IN WITNESS WHEREOF, this Sixth Amendment has been executed by the parties on the day and year first written above.

"Seller"

**BUCCANEER BEACH RESORT MOTEL, INC.,** a Florida corporation

By:_____
   Boja J. Loncarski, Vice President


"Buyer"

**T.I. GROUP INVESTMENTS, LLC,** a Florida limited liability company

By:_____
   Steve Gianfilippo, a Managing Member


**As to Section 3 of this Sixth Amendment, agreed to and accepted by:**

**JIM WHITE AND ASSOCIATES, INC.,**
a Florida corporation d/b/a Century 21 Jim White and Associates

By:_____
   James White, President


_____
**LAUNA LISHAMER**


_____
**PHYLLIS NEWBURG**

_____
**BOJA J. LONCARSKI**